Filed 10/21/14

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064675 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE325256) |
| SEAN RHETT MULLENDORE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Evan P. Kirvin, Judge. Affirmed in part; reversed in part and remanded.

Sheila Quinlan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Discussion parts II. and III.

Sean Rhett Mullendore appeals from a judgment convicting him of the felony offense of throwing a substance at a vehicle (Veh. Code, § 23110, subd. (b)) (hereafter, § 23110(b)), and the misdemeanor offenses of assault and vandalism. He argues the section 23110(b) conviction must be reversed because the trial court failed to instruct the jury on the lesser included misdemeanor offense defined in Vehicle Code section 23110, subdivision (a) (hereafter, § 23110(a)). We agree.

Defendant also asserts his assault and vandalism convictions must be reversed because the court (1) declined his request to instruct the jury on the defense of accident, and (2) refused to admit his proffered evidence from an accident reconstruction expert. We find no reversible error as to these claims, and affirm the misdemeanor convictions.

We reverse defendant's felony conviction for violating section 23110(b). We also reverse defendant's 32-month prison sentence because his section 23110(b) conviction formed the basis for this sentence, and we remand the matter to the superior court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

At about 1:00 p.m. on October 19, 2012, Alexander Savage was driving his car on a street with two single lanes for traffic going in opposite directions, and no center median. Traffic was congested and moving slowly, and he was driving about 25 to 30 miles per hour. As Savage was driving, defendant emerged on foot from a parking lot and—without going to the crosswalk or looking for traffic—"walked out in the middle of traffic." The cars in front of Savage had to slow down and drive around defendant because he stayed standing in the lane by the yellow painted divider lines. It appeared

2

that defendant was waiting for the cross-traffic to pass so he could proceed to the other side of the street.

As Savage drove by defendant, defendant was still standing in the lane, about two to three feet from Savage's car. Defendant was facing away from Savage, with his back and side visible to Savage. Defendant was "kind of facing slightly towards both lanes" as he watched the traffic passing in the opposing lane and also watched the traffic coming from behind him in Savage's lane. Defendant was holding what appeared to be a heavy backpack on his left shoulder, with both of his hands on the strap. To pass defendant, Savage had to slow down and drive around him and get "really close" to him. Feeling annoyed at defendant for ignoring the crosswalk, walking into traffic, and just "stand[ing] there" and expecting cars to drive around him, Savage honked and held down his car horn as he was passing by defendant.

A couple of seconds after Savage honked, the windshield of Savage's car was struck by defendant's backpack and "imploded." Describing what occurred, Savage testified that as he was honking his horn and just before his windshield imploded, he saw defendant "swing" his backpack in "one fluid motion." Savage elaborated, "I guess when I honked the horn, he had his backpack on his left shoulder, and he swung it in an arc in response to me driving by him. He slammed it into my left driver's side windshield. [¶] . . . [¶] I don't really know the exact movement. I want to say he dropped it to the bottom of his hand, and he swung it. I know that much. He swung it straight at my windshield. He just kind of let go of it. The backpack flew wherever . . . ."

3

Savage drove 10 to 20 more feet and then stopped his car in the middle of the street, feeling shocked and unsure "how to handle what just happened." Savage looked in his side mirror and saw the backpack lying on the street, and defendant "with his hands up in the air . . . yelling something" as if "inviting [Savage] to come back and fight" him. Unable to see clearly through the shattered windshield, Savage drove into a nearby parking lot and called 911. Savage told the 911 operator: "I was just driving down the street and this guy was, like ran out in the middle of the street and I blared on my horn, 'cause I thought I was gonna hit him. [¶] . . . [¶] And he like threw his backpack, I think it was like full of bricks or something."

While still speaking with the 911 operator, Savage drove his car a couple of blocks and then returned to the parking lot. At one point as he was turning his car around in a different parking lot, defendant approached and called out, " 'Come on, bro. Let's talk about this.' " Back at the original parking lot, Savage could no longer see defendant, but he encountered a police officer who told him they were looking for defendant.

Officer Daron Larkin testified that when interviewed at the scene, Savage reported that defendant "came out of nowhere, walking in front of his vehicle, and he had to apply his brakes abruptly to avoid colliding with" defendant. Savage told Officer Larkin that defendant released a "barrage of unkind words" and at "about the same time, a backpack that he was carrying had swung in at [Savage's] vehicle." At trial, Savage testified that defendant did not jump in front of his car, and he acknowledged he "might have been exaggerating the situation" when he described to the officer what had occurred.

4

The police arrested defendant several blocks from the scene of the incident. Defendant was carrying his backpack. A police search of the backpack revealed various personal effects, including some items at the bottom of the backpack that the police assessed were heavy enough to cause the damage to Savage's windshield.

The entire left corner of Savage's windshield was shattered, and there were two or three cracks spreading out towards the right side of the windshield. The glass in the windshield's left corner was in "tiny chunks" being held together by a safety material, and there were a few "tiny shards" of glass on the dashboard. Savage's driver's window had been open, and various items from the backpack had fallen into his car. It cost Savage about $200 to repair the windshield.

In closing arguments to the jury, the prosecutor argued that when Savage honked at defendant, defendant turned around, took his backpack off his shoulder, and willfully and forcefully swung it at Savage's windshield with the intent to cause serious bodily harm. Defense counsel argued the incident was an accident that occurred when defendant had to dodge Savage's vehicle, and as he did so his backpack hit the windshield. Alternatively, defense counsel argued that even if the jury thought the incident was not an accident and defendant "did it on purpose," he did not use force likely to cause, or have the intent to cause, great bodily injury.

*Jury Verdict and Sentence*

Defendant was charged with assault by means of force likely to cause great bodily injury (count 1); throwing a substance at a vehicle that is capable of causing serious

5

bodily harm and with intent to cause great bodily injury (count 2, § 23110(b)); and misdemeanor vandalism with a prior conviction of vandalism (count 3).

The jury convicted him of the lesser included offense of misdemeanor simple assault for count 1; the section 23110(b) offense for count 2; and the vandalism offense for count 3. In a bifurcated proceeding, the court found true the prior vandalism allegation for count 3, three prior prison term allegations, and a prior strike conviction allegation.

The court struck the prison priors, and sentenced defendant to a term of two years eight months based on the count 2, section 23110(b) conviction (i.e., the 16-month low term, doubled based on the strike prior). The court imposed concurrent terms for the misdemeanor assault and vandalism convictions (counts 1 and 3).[1]

## DISCUSSION

### I. *Failure To Instruct on Section 23110(a) Misdemeanor Offense as Lesser Included Offense of Section 23110(b) Felony Offense*

Defendant asserts the trial court erred in failing to instruct the jury on the misdemeanor defined in section 23110(a) as a lesser included offense of the felony defined in section 23110(b). The Attorney General asserts the misdemeanor offense is not a lesser included offense; even if it is, the evidence did not warrant instruction on the lesser offense; and any instructional error was harmless.

---

[1] The Attorney General concedes the abstract of judgment erroneously states the prior prison term enhancements were stayed, whereas it should state these enhancements were stricken. Because we are reversing the sentence, we need not order this correction.

6

A. *Section 23110(a) Is a Lesser Included Offense of Section 23110(b)*

The two subdivisions of section 23110 state:

"(a) Any person who *throws any substance at a vehicle* or any occupant thereof *on a highway* is guilty of a misdemeanor.

"(b) Any person who *with intent to do great bodily injury* maliciously and willfully *throws or projects* any rock, brick, bottle, metal or other missile, *or projects any other substance capable of doing serious bodily harm at such vehicle* or occupant thereof is guilty of a felony and upon conviction shall be punished by imprisonment in the state prison." (Italics added.)

A lesser offense is necessarily included in a greater offense if the greater offense cannot be committed without also committing the lesser offense. (*People v. Hughes* (2002) 27 Cal.4th 287, 366.) Thus, section 23110(a) is a lesser included offense of section 23110(b) if a violation of subdivision (b) necessarily constitutes a violation of subdivision (a). For purposes of the court's instructional duty, this determination can be based on the statutory elements test as well as the accusatory pleading test; that is, " 'a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]' " (*People v. Smith* (2013) 57 Cal.4th 232, 240.)

While discussing the instructions, the court initially stated it would instruct on section 23110(a) because it was a lesser included offense of section 23110(b). However, the court later decided not to give the instruction, stating that section 23110(b) could be

7

violated without violating section 23110(a) because the felony offense (unlike the misdemeanor offense) need not occur on a highway and could be committed by projecting, rather than throwing, a substance.

When determining the meaning of a statute, we view the enactment as a whole; consider the plain, commonsense meaning of the language used by the Legislature; and avoid an interpretation that is contrary to the apparent legislative intent or that would lead to absurd results. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131; *People v. Jenkins* (1995) 10 Cal.4th 234, 246.) We conclude the trial court's interpretation of the statute is contrary to its plain language.

First, section 23110 reflects that *both* subdivisions (a) and (b) require that the vehicle be on a highway. Subdivision (a) states the offense is committed when a defendant throws a substance at a vehicle "on a highway," and subdivision (b) states the offense is committed when the defendant throws a substance at "*such vehicle*" with the intent to cause great bodily injury and with a substance capable of causing serious bodily harm. Based on the plain language in subdivision (b), "such vehicle" refers to a vehicle described in subdivision (a); i.e., a vehicle on a highway. Alternatively, even if we were to construe subdivision (b) as applying even when a vehicle is *not* on a highway, the information in this case alleged that the subdivision (b) offense occurred "on a highway." Accordingly, applying the accusatory pleading test, the subdivision (b) offense as alleged in this case included the highway element required for a violation of subdivision (a).

Second, reading section 23110 in its entirety, there is no meaningful distinction between *throwing* a substance, as opposed to *projecting* a substance, so as to differentiate

8

the two subdivisions on this basis. As it is commonly understood, the term projecting can include the concept of throwing. Among the definitions set forth in a standard dictionary, "project" is defined as meaning "to throw or cast forward." (Webster's Collegiate Dict. (10th ed. 2002) p. 930.) Although section 23110(a) refers solely to the verb "throws," it is apparent that section 23110(b) is designed to proscribe the *same conduct*, only with the added elements of intent to cause great bodily injury and use of an object capable of such injury. Notably, the first portion of subdivision (b) refers to *throwing or projecting* "any rock, brick, bottle, metal or other missile," and the second portion of subdivision (b) refers solely to *projecting* "any other substance capable of doing serious bodily harm." We are satisfied the Legislature did *not* intend that there would be no culpability under the second portion of subdivision (b) if a person threw, but did not project, a substance capable of causing serious bodily harm. Rather, the omission of the term "throwing" from the second portion of subdivision (b) suggests that—consistent with the standard dictionary definition—the Legislature viewed "throw" and "project" as interchangeable terms that simply mean the propelling of a substance.

This interpretation of the statutory language is supported by a long-established description of the section 23110 felony and misdemeanor offenses set forth in *People v. Whitney* (1978) 76 Cal.App.3d 863. When rejecting an argument that the statute requires that the vehicle be moving on the highway, the *Whitney* court cited case authority finding movement was not required under subdivision (a), and then concluded movement likewise was not required under subdivision (b) because the latter "*merely adds the additional elements of intent and capacity to do serious bodily injury*" which indicated

9

the two subdivisions were enacted for the same purpose. (*Whitney*, at p. 868, italics added.) Based on a plain reading of the statutory language, we also conclude that the subdivisions prohibit the same conduct, except subdivision (b) includes the additional elements of intent to cause great bodily injury and use of an object capable of causing this injury. Accordingly, a violation of section 23110(b) necessarily is a violation of section 23110(a), and the latter is a lesser included offense of the former.

### B. *Substantial Evidence of Lesser Included Offense*

A trial court must instruct on a lesser included offense " ' "whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury." ' " (*People v. Prince* (2007) 40 Cal.4th 1179, 1265.) Substantial evidence in this context is evidence from which reasonable jurors could conclude that the lesser offense, but not the greater, was committed. (*Ibid*.) When evaluating whether a lesser included offense instruction should have been given, we view the evidence in the manner most favorable to the defendant and apply an independent review standard. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584-585; *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

Drawing all reasonable inferences in defendant's favor, reasonable jurors could have concluded defendant committed the misdemeanor offense, not the felony offense, by finding he acted without the intent to commit great bodily injury. This is not a case where the defendant directly inflicted force on the victim; rather, defendant hit the windshield of the victim's car. Because the circumstances involved an interaction between a pedestrian and a moving car, the jury could reasonably assess that defendant,

10

as the pedestrian, felt vulnerable when confronted by the honking, passing car, and he lashed out in anger or frustration at the car but without the intent to injure the driver who was seated inside the vehicle. There was evidence worthy of the jury's consideration on the issue of defendant's specific intent, and thus the trial court was required to instruct on the lesser misdemeanor offense.

C. *Failure To Instruct on Lesser Offense Was Not Harmless*

We also conclude the instructional error was not harmless because there is a reasonable probability the outcome would have been more favorable to defendant had the jury been instructed on the lesser offense. (See *People v. Prince, supra*, 40 Cal.4th at p. 1267 [reasonable probability of different outcome standard generally applies to erroneous failure to instruct on lesser included offense].) The rationale for requiring instruction on lesser included offenses is to avoid forcing the jury into an "'unwarranted all-or-nothing choice'" which creates the risk the jury will convict on the charged offense even though one of the elements remains in doubt because "'the defendant is plainly guilty of *some* offense . . . .'" (*People v. Hughes, supra*, 27 Cal.4th at p. 365.) Here, the evidence showed that defendant's backpack hit the windshield of the victim's vehicle. If the jury found defendant acted intentionally and not accidentally, it would have recognized that he committed the type of conduct defined in count 2 for the section 23110(b) offense, i.e., throwing something at a vehicle. Because he committed the vehicle-related conduct prohibited by the statute, the jurors may have been inclined to return a guilty verdict for this count even if one or more of them had doubts whether he had the specific intent to inflict great bodily injury. As noted, the circumstances of the offense (involving

11

pedestrian contact with a moving vehicle) could reasonably support a finding either way on the issue of whether defendant intended to injure the driver. Had the jury been given the option of convicting defendant of the vehicle-related offense defined in section 23110, but without the intent to injure element, it may well have selected this lesser offense.

This conclusion is buttressed by the jury's decision (for count 1) to find defendant guilty of misdemeanor simple assault rather than the felony of assault by means of force likely to produce great bodily injury. Because the jury had doubts concerning the defendant's use of (or ability to apply) force likely to produce great bodily injury (see CALCRIM No. 875), there is a reasonable probability it also had doubts about whether defendant had the intent to inflict such injury.

Based on the failure to instruct on the lesser included offense, the conviction on the count 2, section 23110(b) offense must be reversed. The sentence must also be reversed because it was premised on this conviction.

## II. *Refusal To Instruct on Defense of Accident*

Defendant asserts the trial court erred in refusing his request that the jury be instructed on the defense of accident. We agree, but find the error harmless.

The accident defense applies if the defendant acted " 'without the intent required for [the] crime, but acted instead accidentally.' " (*People v. Anderson* (2011) 51 Cal.4th

12

989, 996; Pen. Code, § 26; see CALCRIM No. 3404.)[2]  A trial court generally does not have a sua sponte duty to instruct on an accident defense; however, it must give a pinpoint instruction on the defense when it is requested and supported by the evidence. (*People v. Anderson, supra*, at pp. 996-998.)  When determining whether a defense is supported by the evidence, the trial court does not make credibility resolutions; considers only whether there is evidence of the defense sufficient to raise a reasonable doubt; and resolves doubts in favor of giving the instruction.  (*People v. Salas* (2006) 37 Cal.4th 967, 982; *People v. Strozier* (1993) 20 Cal.App.4th 55, 63.)  On appeal, we independently review the court's refusal to instruct on a defense.  (*People v. Manriquez, supra*, 37 Cal.4th at p. 581.)

When refusing to instruct on accident, the trial court stated there was no evidence that "directly supports the giving of the instruction," but defense counsel was not prohibited from arguing that the incident was an accident.  Contrary to the court's conclusion, there was evidence from which reasonable jurors could credit the defense claim of accident.  In his statements to the authorities and in his trial testimony, Savage stated he had to slow down or brake when he encountered defendant standing or moving in the street; defendant was facing with his back and side towards Savage; Savage honked and held down his horn as he passed closely by defendant; and in response defendant

---

2        Based on CALCRIM No. 3404, defendant requested an accident instruction stating:  "The defendant is not guilty of Counts One, Two or Three if he acted without the intent required for that crime, but acted instead accidentally.  You may not find the defendant guilty of Assault By Means of Force Likely to Cause Great Bodily Injury; Throwing an Object at a Vehicle; or Vandalism unless you are convinced beyond a reasonable doubt that he acted with the required intent[.]"

13

swung or threw his heavily-weighted backpack at Savage's windshield.  This testimony does not foreclose inferences that defendant was startled by the sound of the horn; he responded in a quick motion and accidentally propelled his backpack onto Savage's moving vehicle; and the force of defendant's movement combined with the force of the moving vehicle caused the windshield to shatter.

However, the failure to instruct on the accident defense was harmless under any standard of review.  (See *People v. Wharton* (1991) 53 Cal.3d 522, 571 [state law standard of reasonable probability of different outcome applies to failure to give requested pinpoint instruction on defense]; *People v. Rogers* (2006) 39 Cal.4th 826, 872, [federal constitutional standard of harmless beyond a reasonable doubt applies when error deprives defendant of right to present complete defense].)  The jury was generally instructed that the prosecution had to prove guilt beyond a reasonable doubt.  (See CALCRIM No. 220.)  Further, the jury was told that the crimes required a union of act and wrongful intent; wrongful intent meant the defendant *intentionally* committed the prohibited act; and for the offense of throwing a substance at a vehicle the defendant also had to act with the specific intent required for that crime.  (See CALCRIM No. 252.)  When instructed on the specific charged offenses, the jury was told that the prosecution had to prove for the assault and section 23110(b) counts that defendant acted willfully, which meant "*willingly or on purpose*," and for the vandalism count that defendant acted maliciously, which meant "*intentionally* does a wrongful act" or "acts with the *unlawful intent* to annoy or injure . . . ."  (Italics added; see CALCRIM Nos. 875, 915, 2900.)

14

From these instructions, the jury was informed that if it had doubts as to whether defendant acted intentionally and purposefully when he hit the victim's car with his backpack, he was entitled to an acquittal as the prosecutor had not met its burden. We assume jurors are reasonably intelligent (*People v. Lopez* (2011) 198 Cal.App.4th 698, 708), and thus they would readily understand that accidental conduct is the opposite of the required intentional conduct, and they could not convict if the prosecution failed to establish that defendant acted on purpose rather than by accident. This conclusion is buttressed by the closing arguments of the prosecutor and defense counsel, who noted that the prosecution had the burden to prove guilt beyond a reasonable doubt, and presented their differing views as to whether defendant acted purposefully or accidentally when he swung his backpack.

Contrary to defendant's contention, this case is not in the same posture as *People v. Gonzales* (1999) 74 Cal.App.4th 382, where the appellate court reversed based on the failure to instruct on accident. In *Gonzales*, the jury sent notes to the trial court stating jurors did not understand the meaning of "willful intent" as it related to an accidental event; the court failed to provide clarification on this point; and the jury at one point reported being deadlocked on the issue of willfulness. (*Id*. at pp. 388-391.) Here, there was no such suggestion of jury confusion, and the parties' closing arguments reinforced the import of the instructions that if the jury was not convinced that defendant acted purposefully rather than accidentally, he must be found not guilty.

15

Because the jury was fully apprised of its duty to acquit if the prosecution did not establish that defendant acted purposefully rather than accidentally, the failure to explicitly instruct on the accident defense was harmless.

III. *Refusal To Admit Evidence of Accident Reconstruction Expert*

Defendant contends the court erred by refusing to allow him to present evidence from an accident reconstructionist.

At a pretrial Evidence Code section 402 hearing, the defense proffered testimony from Larry Armendariz, who worked for 28 years as a California Highway Patrol officer and had specialized training in accident reconstruction. Armendariz opined that if defendant became startled from the sound of a horn blaring as he was crossing the street, and if he turned rapidly and had a backpack on his shoulder, the backpack would slide to his elbow and slide across the car and into the windshield. On cross-examination by the prosecutor, Armendariz also opined that it does not take a lot of force to smash a windshield, explaining that although he was not an automobile engineer, "some of [the] windshield carries the structural integrity of the car" and if a person hits a "soft spot" the windshield will be cracked or smashed.

At the conclusion of the proffered testimony, defense counsel requested that the court allow presentation of Armendariz's opinion testimony (and a computer generated video as a demonstrative aid) to support the defense theory that defendant did not intentionally throw or swing his backpack at the car, but rather inadvertently hit the car with his backpack as he was "ducking out of the way" of the car. The prosecutor opposed

16

admission of the evidence, arguing it was based on speculative and insufficient information, and would not assist the jury.

The court found Armendariz was qualified as an accident reconstruction expert, but declined to allow admission of the expert evidence to support that defendant was startled and, as he turned, his backpack slid down his arm and hit the vehicle. The court reasoned the expert's opinion that the backpack hit the windshield by accident rather than being purposefully thrown was speculative. Also, the court found the opinion testimony was not a matter beyond common experience, stating that if the evidence supported the defense theory, the jury could easily surmise that if a person is startled by a car horn honking, they may twirl and their backpack may accidently fall off the person's arm and hit the windshield, and an expert's opinion about this was not in any way helpful to the jury to determine the facts of the case. Further, the court excluded the evidence under Evidence Code section 352, finding any probative value was slight and outweighed by concerns for undue time consumption, prejudice, and confusion.

To be admissible, expert opinion testimony must be related to a subject that is sufficiently beyond common experience so that the expert's opinion would assist the trier of fact. (Evid. Code, § 801, subd. (a).) The jury need not be wholly ignorant of the subject matter of the opinion to justify its admission; the test is whether the evidence would add something to the jury's common fund of information so that it would assist the jury. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1299-1300.) However, the expert opinion testimony may properly be excluded when "'"the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as

17

intelligently as the witness."'" (*Id*. at p. 1300.)  On appeal, we review the court's ruling for abuse of discretion.  (*People v. Smith* (2003) 30 Cal.4th 581, 627.)

The record shows no abuse of discretion in the court's exclusion of the expert evidence.  Although Armendariz explained that he made measurements and calculations to reach his opinion about what occurred, the proffered evidence does not indicate *how* these assessments shed light on whether defendant acted accidentally or purposefully when his backpack struck the windshield.  Absent an evidentiary link between the expert's calculations and the question of defendant's intentional versus accidental conduct, the trial court could reasonably assess that the expert evidence would not provide the jury with any useful information beyond what the jury could figure out on its own.

On appeal, defendant contends the court should have admitted the expert evidence because it provided the jury with information concerning the small amount of force that can break a windshield.  The record does not show an abuse of discretion in this regard. Defense counsel did not attempt to qualify Armendariz as an expert regarding the structural integrity of windshields, nor did defense counsel present this theory of admissibility to the trial court.  (See *People v. Ramos* (1997) 15 Cal.4th 1133, 1178 [to preserve challenge to evidentiary ruling, party must inform court of purpose and relevancy of evidence].)  The testimony regarding the force that can shatter a windshield was elicited by the *prosecutor* on cross-examination; Armendariz testified he had some knowledge about windshield construction but qualified his answer by stating he was not an automobile engineer; and defense counsel did not follow up with any arguments

requesting that the court admit the expert evidence for purposes of informing the jury about windshield structural characteristics. Defense counsel stated in general fashion that Armendariz was an expert "about accidents, accident reconstruction, measurements, and how things collide," and that Armendariz's testimony was derived from the "science of how the two individuals would have interacted" and "hard facts based on science." However, defense counsel made no reference to windshield structural integrity as being part of Armendariz's area of expertise. There is nothing in the record that required the court to find Armendariz was qualified to testify about the structure of windshields, nor is there a showing that defense counsel requested admissibility on this basis.

The court did not abuse its discretion in excluding the proffered expert evidence.

DISPOSITION

The judgment is reversed as to the count 2 felony offense of throwing a substance at a vehicle (§ 23110(b)) and as to the sentence. In all other respects the judgment is affirmed. The matter is remanded to the superior court for further proceedings consistent with this opinion.

HALLER, Acting P. J.

WE CONCUR:

McDONALD, J.

AARON, J.

19