Filed 4/21/21  P. v. Marion CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OTTO CLIFFORD MARION,<br><br>    Defendant and Appellant. | 2d Crim. No. B300814<br>(Super. Ct. No. PA092451)<br>(Los Angeles County) |

Otto Clifford Marion appeals the judgment entered after a jury convicted him of assault with a deadly weapon, i.e., a box cutter (Pen. Code,[1] § 245, subd. (a)(1)) and battery (§ 242).  The trial court sentenced him to 4 years in state prison, plus 180 days in county jail.  Appellant contends (1) the court violated its sua sponte duty to instruct the jury on simple assault (§ 240) as a lesser included offense of assault with a deadly weapon; and (2) the court abused its discretion in denying probation.  We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

# STATEMENT OF FACTS

On the night of May 16, 2019, Juan Rodriguez and Alex Menjivar went to a fast food restaurant in Panorama City.[2] They ordered at the window as appellant stood in line behind them, then sat down and waited for their food. While they were waiting, appellant argued with a restaurant employee and repeatedly said "give me my fucking milkshake." David Essex, who was in line behind appellant, testified that appellant had "a look in his eyes" that led Essex to believe "he was looking for trouble."

When Rodriguez's number was called he got up, walked past appellant, and said, "Excuse me." Appellant replied "what the fuck, I was here first." After Rodriguez got his food, appellant tried to grab it from him. Appellant blew in Rodriguez's face, called him a "little ass kid" and a "faggot," asked him if he thought he was "tough," and told him to "hit" him. Appellant got his food and threw some of his french fries at Rodriguez. Rodriguez responded by throwing some of his own fries back at appellant.

Appellant punched Rodriguez in the face several times and grabbed his arm. Appellant tried to pull Rodriguez to the ground and continued punching him. Rodriguez started punching appellant, who was physically much larger than Rodriguez, and tried to place appellant in a chokehold in an effort to subdue him. Rodriguez called for Menjivar's help. Menjivar and Essex grabbed appellant and pulled him off of Rodriguez.

As Rodriguez was walking away, appellant pulled out a lanyard with a box cutter attached to it and swung it at Menjivar.

---

[2] A video of the incident, which was recorded on the restaurant's video surveillance cameras, was played at trial.

After Menjivar ran away, appellant grabbed Rodriguez by his legs, pulled him to the ground, and began punching him again. Rodriguez put up his hands to protect his face and saw that his thumb was bleeding. Rodriguez was also bleeding from a cut near his right knee. As appellant was attempting to stab Rodriguez with the box cutter he repeatedly said, "It's a beautiful day to die." Appellant also repeatedly said "[y]ou're going to die today. I'm going to kill you." When Menjivar saw appellant raise the blade of the box cutter to Rodriguez's neck, he grabbed appellant's arm and began punching him. Appellant bit Menjivar's arm as he continued trying to raise the blade to Rodriguez's neck.

Essex thought appellant was going to kill Rodriguez, so he and his girlfriend helped Menjivar pull appellant off Rodriguez. Following a brief struggle, Essex wrested the box cutter from appellant's hand. Appellant told Essex "it was two against one, that he was just defending himself."

The police arrived and arrested appellant, who was transported to the hospital for treatment of cuts on his right fist. Appellant told the police "[y]ou guys took so long to respond, I almost killed that kid. I almost killed a kid for no good reason." Rodriguez also went to the hospital, where he received stitches for a three-quarter-inch cut to his thumb and a two-and-a-half-inch cut to his leg.

## DISCUSSION

### *Failure to Instruct on Simple Assault*

Appellant contends the trial court violated its sua sponte duty to instruct the jury on the lesser included offense of simple assault (§ 240). We are not persuaded.

"A trial court must instruct on a lesser included offense ""whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury."" [Citation.] Substantial evidence in this context is evidence from which reasonable jurors could conclude that the lesser offense, but not the greater, was committed. [Citation.] When evaluating whether a lesser included offense instruction should have been given, we view the evidence in the manner most favorable to the defendant and apply an independent review standard." (*People v. Mullendore* (2014) 230 Cal.App.4th 848, 856.)

Simple assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Simple assault is necessarily included in the offense of assault with a deadly weapon. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748.)

The jury was instructed pursuant to CALCRIM No. 875 that appellant was guilty of assault with a deadly weapon in violation of section 245, subdivision (a)(1) if the People proved beyond a reasonable doubt that (1) he "did an act with a deadly weapon other than a firearm;" (2) he "did that act willfully;" (3) when appellant committed the act, "he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;" (4) when appellant so acted "he had the present ability to apply force with a deadly weapon other than a firearm[;]" and (5) he "did not act in self-defense." The jury was further instructed that "[a] deadly weapon other than a firearm is any object, instrument, or weapon that is inherently deadly or

4

one that is used in such a way that it is capable [of] causing and likely to cause death or great bodily injury." (Italics omitted.)

The trial court had no duty to instruct on simple assault because the evidence did not support a finding that appellant was guilty of that offense but not the greater offense of assault with a deadly weapon. The assault was captured on video, and the video was played for the jury at trial and admitted as an exhibit. Although appellant did not request that this evidence be transmitted to this court, we have obtained and reviewed the video. The recording shows appellant initiating a fight with Rodriguez and punching him several times. After appellant was pulled off Rodriguez and Rodriguez began to walk away, appellant pulled out a box cutter and attacked Rodriguez again. Appellant cut Rodriguez's knee and thumb with the box cutter and attempted to reach Rodriguez's neck with the blade as he repeatedly said, "you're going to die today. I'm going to kill you." Because the evidence unequivocally establishes that appellant attempted to apply "a sharp object" to "[a] vulnerable part of [Rodriguez's] body" (*In re B.M.* (2018) 6 Cal.5th 528, 538), no reasonable juror would have found that appellant was merely guilty of committing a simple assault rather than an assault with a deadly weapon.

In arguing to the contrary, appellant notes that the jury was not properly instructed on the definition of a deadly weapon. Although the court instructed that a deadly weapon includes "any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury," it did not include the additional optional language in CALCRIM No. 875 that defines

5

an inherently deadly weapon as one that "is deadly or dangerous in the ordinary use for which it was designed."

In *People v. Aledamat* (2019) 8 Cal.5th 1 (*Aledamat*), in which the defendant was also convicted of a using a box cutter to commit an assault with a deadly weapon, our Supreme Court held it was error to instruct the jury pursuant to CALCRIM No. 875 that a weapon could be either inherently deadly or deadly in the way it had been used when the weapon could not be found to be inherently deadly. The court explained that although certain objects such as dirks and blackjacks are inherently deadly, a box cutter is a "'type of knife'" that is "'designed to cut things and not people'" and thus "'cannot be an inherently deadly weapon "as a matter of law."'" (*Id.* at pp. 6, 8.) Because the error was legal rather than factual, it was subject to the harmless-beyond-a-reasonable-doubt standard established in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].) In concluding beyond a reasonable doubt that the error did not contribute to the verdict in that case, the court reasoned that "if used to assault someone, i.e., used as a weapon, a box cutter is potentially deadly even if not designed for that purpose." (*Aledamat*, at p. 14, italics omitted.)

Here, it also clear beyond a reasonable doubt that the error in instructing the jury that a box cutter can be considered an inherently deadly weapon did not contribute to the verdict. Any reasonable juror would have found that appellant "used" the box cutter "in such a way that it [was] capable of causing and likely to cause death or great bodily injury." (CALCRIM No. 875.) The defendant in *Aledamat* pulled out a box cutter, extended the blade, and thrust it at the victim at waist level from three to four feet away while saying, "'I'll kill you.'" (*Aledamat, supra*, 8

Cal.5th at p. 4.)  Appellant initiated physical contact with Rodriguez, repeatedly punched him, cut his knee and thumb with the box cutter, and attempted to cut his neck as he repeatedly said "I'm going to kill you."  Moreover, appellant did not expressly dispute at trial that he had used the box cutter as a deadly weapon; rather, he claimed that he had used the weapon in self-defense.  Under the circumstances, the error in instructing the jury on the definition of a deadly weapon provides no basis for reversal of appellant's conviction.  Contrary to appellant's claim, this conclusion is not undermined by the jury's "not true" finding on the allegation that appellant inflicted great bodily injury in committing the assault.

For the first time in his reply brief, appellant alternatively claims that "[t]he facts of this case required a simple assault instruction because [appellant's] self defense claim was that the simple assault fight escalated into a more serious self-defense situation."  Because this claim was not raised in the opening brief, it is forfeited.  (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218-1219.)

In any event, the claim lacks merit.  Appellant was plainly the initial aggressor and threw the first punch.  As the jury was instructed pursuant to CALCRIM No. 3471, appellant thus had a right to subsequently act in self-defense only if (1) "[h]e actually and in good faith tried to stop fighting;" (2) "[h]e indicated by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that []he had stopped fighting;" and (3) "[h]e gave his opponent a chance to stop fighting."  The jury was further instructed that "[a] person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to

7

use force." (CALCRIM No. 3472) In light of the evidence, as reflected in the video of the incident and the testimony of the victims and eyewitnesses, no reasonable juror would have found that appellant had a right to act in self-defense and was thus merely guilty of committing a simple assault at the outset of the encounter. His claim of instructional error thus fails.

### *Denial of Probation*

Appellant also contends the court erred in denying probation. We disagree.

Because appellant was convicted of assault with a deadly weapon, he was presumptively ineligible for probation. (§ 1203, subd. (e)(2).) Under section 1203, however, a court may grant probation in "unusual cases in which the interests of justice would best be served if the person is granted probation." (*Id.*, subd. (e).)

"The standard for reviewing a trial court's finding that a case may or may not be unusual is abuse of discretion. [Citations.] The standard is the same for review of an order granting [or denying] probation. 'Probation is an act of clemency which rests within the discretion of the trial court, whose order granting or denying probation will not be disturbed on appeal unless there has been an abuse of discretion.' [Citation.]" (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831.) "Our function is to determine whether the [trial] court's order is arbitrary or capricious, or "'exceeds the bounds of reason, all of the circumstances being considered.'" [Citation.] The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its

discretionary determination to impose a particular sentence will not be set aside on review. [Citations.]" (*Ibid.*)

Rule 4.413 of the California Rules of Court[3] sets forth the criteria for the trial court to consider in determining whether probation should be granted when a defendant is presumptively ineligible.  The criteria are divided into two categories:  (1) facts relating to the limitation on probation; and (2) facts limiting the defendant's culpability.  (Rule 4.413(c)(1).)  The first criteria include the following considerations:  "(A) The factor or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence; and [¶] (B) The current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, and the defendant has been free from incarceration and serious violation of the law for a substantial time before the current offense."  (*Ibid.*)

The second criteria include:  "(A) The defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence; [¶] (B) The crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation; and [¶] (C) The defendant is youthful or aged, and

---

[3] All further rule references are to the California Rules of Court.

9

has no significant record of prior criminal offenses." (Rule 4.413(c)(2).)

Appellant's probation report set forth six circumstances in aggravation and no factors in mitigation. The circumstances in aggravation included that appellant had engaged in violent conduct indicating a danger to society (rule 4.421(b)(1)), his prior convictions are numerous and of increasing seriousness (rule 4.421(b)(2)), and his prior performance on probation was unsatisfactory (rule 4.421(b)(5)). The report makes no reference to appellant suffering from any mental disorder. At the sentencing hearing, defense counsel asked the court to grant probation based on appellant's "mental health issues" and presented unsworn testimony from a friend of appellant's regarding his mental state.

In concluding that appellant had not overcome the statutory presumption that he was ineligible for probation, the court stated: "I think [defense counsel] recognizes it's a hard ask to say that probation would be an appropriate outcome here, given the factors that are in aggravation in the case and his prior record. I just don't find this to be an unusual case for that. If this case stood alone, you have a 50-year-old man with untreated mental illness, it would still be a hard ask, given the nature of the injuries in this case. I know the jury did not find great bodily injury, like life-threatening injury; but there was significant, serious injury, no doubt, and with the weapon that he was carrying at the time. So I don't find this to be the unusual case. And even if [he] was not presumptively ineligible for probation, if that were the case, just looking at the criminal history it would be, in my view, irresponsible to do this. So I just cannot grant probation in this case."

10

After further discussing the circumstances of the crimes and appellant's lengthy criminal history, the court added that "for me to think of probation, as much as I would like to see people get mental health treatment, [it] is just completely outweighed by the dangers that he poses once he's out [of custody]. And so I'm going to deny the request for probation at this time."

The court did not abuse its discretion. The only criteria that arguably may have supported a finding of unusual circumstances to overcome appellant's presumptive ineligibility for probation was that "[t]he crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation." (Rule 4.413(c)(2)(B).) But there was no showing that appellant committed the assault due to a mental condition. As defense counsel conceded, appellant may also have substance abuse issues. Moreover, the record amply supports the finding that appellant presents a serious danger to society, and there was no showing that appellant would respond favorably to mental health care and treatment that would have been required as a condition of probation.

Contrary to appellant's claim, the court did not treat his prior failure to seek mental health treatment as a circumstance in aggravation. We also reject appellant's claim that the court "substituted its own erroneous judgment for that of the jury on the [great bodily injury] finding." The court merely recognized that notwithstanding the jury's finding that Rodriguez had not suffered great bodily injury, appellant had succeeded in inflicting injuries that required stitches. To the extent appellant purports

to invoke the protections of the Americans With Disabilities Act (ADA) (42 U.S.C.S. § 12132), he did not raise the claim below so it is forfeited. In any event, appellant offers no evidence that he had been diagnosed with a disability that would qualify him for such protection. Because appellant fails to meet his burden of showing that the court's decision to deny probation was irrational or arbitrary, his claim that the court's order amounts to an abuse of discretion also fails.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

12

Daniel B. Feldstern, Judge
Superior Court County of Los Angeles

_____

Benjamin P. Lechman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.