Filed 5/24/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>FRANCISCO CARRILLO ESCARENO,<br><br>    Defendant and Appellant. | A160209<br><br>(Napa County Super Ct. No. 20CR000557) |

Francisco Carrillo Escareno pleaded no contest to two felonies, four misdemeanors and an infraction arising from a single incident of driving under the influence of alcohol and without a valid license. He contends the trial court erred in refusing to dismiss the misdemeanor and infraction counts pursuant to Vehicle Code section 41500 after sentencing him to prison on the felony counts. We will affirm the judgment.

## BACKGROUND

The following facts are taken from the preliminary hearing testimony of Napa County Police Officer Kyle Cadena. About 10:07 p.m., on February 29, 2020, Napa dispatch broadcast a lookout for a possible drunk driver at State Route 29 and Oak Knoll Avenue. A caller had reported a gold Toyota Avalon with California license plate No. 8CUW108, driving at rapidly alternating speeds, crossing the double line into opposing lanes of traffic and the solid line at the shoulder of the road. About 40 minutes later, Cadena was dispatched to Valle Verde and Shelter Creek, where the same vehicle

1

had been observed parked, engine still running, with its lights on and the driver apparently asleep and unresponsive to knocking on his window.

When Officer Cadena arrived at the scene, paramedics had taken the keys from the driver. Cadena contacted the driver, appellant, once the paramedics determined there was no medical emergency. Appellant appeared impaired, likely due to alcohol: He was slurring his words, repeating himself, and having difficulty balancing and walking steadily. Appellant said he was driving home from work and had consumed 10 beers in the last seven hours, having stopped drinking within the last hour. There was an empty 12-ounce can of beer in plain view on the floorboard of the front passenger seat. Appellant performed poorly on field sobriety tests, a preliminary screening of a breath sample indicated the presence of alcohol, and he was placed under arrest. A blood sample was taken at 12:33 a.m. and subsequent testing found a blood alcohol level of .208. Appellant was on post release community supervision (PRCS) with alcohol and testing terms, and his driver's license was suspended. He had terms on his driver's license requiring use of an ignition interlock device but the Avalon was not equipped with one.

Appellant was charged by information filed on March 17, 2020, with felony driving under the influence of alcohol after two prior felony convictions for the same (Veh. Code,[1] §§ 23152, subd. (a), 23550.5) (count 1); felony driving with .08 percent or higher blood alcohol after two prior felony convictions for the same (§§ 23152, subd. (b), 23550.5) (count 2); misdemeanor unlawful operation of a vehicle not equipped with a functioning ignition interlock device (§ 23247, subd. (e)) (count 3); misdemeanor driving when

_____

[1] Further statutory references will be to the Vehicle Code except as otherwise specified.

2

privilege suspended for driving under the influence, with priors (§ 14601.2, subd. (a)) (count 4); misdemeanor driving while license suspended or revoked, with priors (§ 14601.5, subd. (a)) (count 5); misdemeanor driving without a valid license (§ 12500, subd. (a)) (count 6); and possession of an open container of alcoholic beverage while driving, an infraction (§ 23222, subd. (a)) (count 7). It was alleged in connection with counts 1 and 2 that appellant's blood alcohol concentration was 0.15 percent by weight and more within the meaning of section 23578.

On March 23, 2020, appellant entered pleas of no contest to all counts and admitted the special allegations and prior convictions.

At sentencing on April 21, 2020, the court imposed the three-year aggravated term on count 1 and the same sentence on count 2, stayed pursuant to Penal Code section 654; the court imposed certain fees associated with these felony counts and waived others. As the court turned to sentencing on the misdemeanors and infraction, defense counsel interjected that these counts had to be dismissed pursuant to section 41500 because the court was sentencing appellant to prison. The prosecutor disagreed and the court concurred, stating it did not read section 41500 as applying to charges filed concurrently with a pending felony case. Proceeding with the misdemeanor counts, the court imposed a sentence of 104 days in county jail and a fine, both stayed pursuant to Penal Code section 654. The court also stayed the fine on the infraction pursuant to Penal Code section 654.

This appeal followed.

## DISCUSSION

Section 41500, subdivision (a), provides: "A person shall not be subject to prosecution for a nonfelony offense arising out of the operation of a motor vehicle . . . that is pending against him or her at the time of his or her

3

commitment to the custody of the Secretary of the Department of Corrections and Rehabilitation, the Division of Juvenile Justice in the Department of Corrections and Rehabilitation, or to a county jail pursuant to subdivision (h) of Section 1170 of the Penal Code."

This statute "is an exception to the rule that all criminal offenses are subject to prosecution." (*Joseph v. Superior Court* (1992) 9 Cal.App.4th 498, 503.) " '[T]here is . . . strong public policy that allows felons sentenced to state institutions to obtain relief from detainers that might render their release date uncertain and thus adversely affect their eventual rehabilitation.' " (*People v. Lopez* (2013) 218 Cal.App.4th Supp. 6, 11 (*Lopez*), quoting *People v. Freeman* (1987) 225 Cal.App.3d Supp. 1, 4 (*Freeman*).) "A prisoner serving time often faces other charges or proceedings when his term of imprisonment is completed. These are sometimes referred to as 'detainers' or 'holds.' They render the prisoner's final date of release into the community uncertain, and often adversely affect his security classification thereby preventing his participation in various programs otherwise available to prisoners." (*Freeman,* at p. Supp. 4, fn. 2.)

The policy favoring relief from detainers " 'was expressly adverted to by the Legislature in the enactment of section 41500. In amending the section in 1972, the Legislature noted that the purpose of section 41500 is to allow prisoners to leave prison with a clean record. [Citation.] The Legislature further noted in 1975, when the section was amended to extend coverage to Youth Authority wards, that the rehabilitative process is aided by eliminating the interruptions due to arrest and prosecution for nonfelony traffic violations . . . ,' " which occurred prior to commitment to the Youth Authority. (*Lopez, supra*, 218 Cal.App.4th at p. Supp. 11, quoting *Freeman, supra*, 225 Cal.App.3d at p. Supp. 4.) Furthermore, it is in the public interest

4

that courts not be burdened with the prosecution of minor cases where the defendant has already been sentenced to serve a long term in prison or in the Youth Authority, and the additional prosecution will not substantially increase that term. (*Freeman,* at p. Supp. 4.)

In appellant's view, at the point he was sentenced to prison on the felony offenses, the nonfelony charges were pending against him because sentence had not yet been imposed on them. He characterizes the issue on this appeal as whether these "pending" misdemeanor charges and infraction were subject to the section 41500, subdivision (a), ban on prosecution, or were exempt from that ban pursuant to the statutory exception stated in section 41500, subdivision (d). Subdivision (d) provides: "The provisions of this section shall not apply to a nonfelony offense if the department is required by this code to immediately revoke or suspend the privilege of a person to drive a motor vehicle upon receipt of a duly certified abstract of the record of a court showing that the person has been convicted of that nonfelony offense." Appellant contends none of the nonfelony offenses come within the subdivision (d) exception and, therefore, they should have been dismissed.

Respondent, by contrast, views section 41500, subdivision (a), as inapplicable to the present case because the misdemeanors and infraction were charged and prosecuted together with the felonies as part of a single, unitary proceeding. As part of this argument, respondent maintains the nonfelony offenses were not "pending" at the time of sentencing because they had been resolved. Respondent notes the observation of the court in *Joseph v. Superior Court, supra,* 9 Cal.App.4th at page 505, that "sentencing occurs at the end of proceedings, not during their pendency."

Countering the suggestion that criminal charges are no longer pending once guilt or innocence has been determined—i.e., after conviction—appellant

5

relies upon *McAlpine v. Superior Court* (1989) 209 Cal.App.3d 1 (*McAlpine*) to argue that criminal charges remain pending until judgment. In a criminal case, the pronouncement of sentence is the judgment. (*Id.* at p. 7; *People v. Villatoro* (2020) 44 Cal.App.5th 365, 369.) *McAlpine* involved Government Code section 945.3, which tolls the statute of limitations on civil actions for police misconduct while related criminal "charges are pending" against the plaintiff. The plaintiff was shot by a police officer who had stopped him for questioning about a reported robbery and was subsequently convicted of robbery; meanwhile, he filed a tort claim against the city, the denial of which triggered the six-month statute of limitations for filing a civil action. (*McAlpine.* at p. 4.) The question in *McAlpine* was whether the criminal proceedings that served to toll the statute of limitations were "pending" only until conviction—in which case the complaint was untimely—or remained "pending" until judgment was entered at sentencing.

Relying on a dictionary definition of "pending" as " '[b]egun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment' (Black's Law Dict. (5th ed. 1979) p. 1021, col. 1)," the city argued that "charges" are pending only until resolved by plea or verdict. (*McAlpine, supra,* 209 Cal.App.3d at p. 6.) The court rejected this view on the basis of two factors: Code of Civil Procedure section 1049, which states that an " 'action is deemed to be pending from the time of its commencement until its final determination upon appeal . . . ,' " and language in Government Code section 945.3 stating, " '[f]or the purposes of this section, charges pending before a justice, municipal, or superior court *do not include appeals* . . . .' " Combined with the definition of "pending" in Code of Civil Procedure section 1049, the court reasoned, the express exclusion of appeals in Government Code section

945.3, showed "the Legislature intended the term 'pending' to include all proceedings leading to judgment." (*McAlpine,* at p. 6.)

The *McAlpine* court did not purport to define the term "pending" for all purposes, and relied upon statutory language specific to the Government Code section it was interpreting. Even accepting for purposes of argument that an offense remains "pending" after the defendant's guilt has been resolved by conviction, the question in the present case is whether the reference in section 41500 to a "nonfelony offense . . . that is pending" against a person "at the time of his or her commitment" to prison was intended to encompass offenses prosecuted in the same action as the offenses resulting in the prison sentence.

On this point, respondent has the better argument. The concerns *Freeman* and *Lopez* described as underlying section 41500, subdivision (a), are not implicated where both felony and nonfelony offenses are charged and prosecuted in a single case. In this situation, prosecution of the nonfelony offenses threatens no detainer that might undermine the certainty of a defendant's prison release date or interruption of the rehabilitative process. Instead, prosecution and sentencing of the nonfelony offenses is simultaneous with that of the felony offenses, and the sentence imposed is what the court deems appropriate for all the offenses together.[2] Describing the nonfelony offenses in the present case as "pending" when appellant was sentenced to prison creates an artificial distinction that does not serve the legislative purpose behind section 41500, subdivision (a).

---

[2] Here, as all the charged offenses arose from the same incident, the nonfelony offenses added neither custodial time nor financial penalty to the penal consequences of the felony offenses: The jail terms and fines for the nonfelony offenses were stayed pursuant to Penal Code section 654.

"The main goal of statutory interpretation is to effectuate the Legislature's intent. (See *Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630.) Thus, 'the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. . . . Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; *Riverside County Sheriff's Dept.*[, at p.] 630; *People v. Mullendore* (2014) 230 Cal.App.4th 848, 854.)" (*People v. Henderson* (2020) 46 Cal.App.5th 533, 545.)

In *People v. Alwien* (2017) 18 Cal.App.5th Supp. 9, a probationer who was temporarily placed in a California Department of Corrections and Rehabilitation diagnostic facility argued he was entitled to dismissal of traffic offenses pursuant to section 41500, subdivision (a), because he was "commit[ted] to the custody of the Secretary of the Department of Corrections and Rehabilitation" as described in the statute. Rejecting this claim, *Alwien* stated, "a literal construction, as appellant asserts, would not further the legislative goal behind the statute—to give people a fresh start for rehabilitation upon release from a lengthy term of incarceration. (*People v. Lopez, supra*, 218 Cal.App.4th at p. Supp. 6; . . . *Freeman, supra*, 225 Cal.App.3rd at p. Supp. 4.)" The same is true here. Applying section 41500 to a defendant being prosecuted in a single action for felony and nonfelony offenses arising out of a single incident would further none of the Legislature's purposes in section 41500. To the contrary, it would offer a windfall to a defendant who committed multiple offenses, contrary to the

8

"strong public policy that drinking drivers, particularly repeating drinking drivers, not drive a vehicle for specified periods of time, and not until they have complied with certain corrective conditions."  (*Freeman,* at p. 4.)[3]

## DISPOSITION

The judgment is affirmed.

---

[3] Our resolution of this issue makes it unnecessary for us to consider whether the nonfelony offenses would come within section 41500, subdivision (d), as appellant contends.

                                         _____

                                         Kline, P.J.

We concur:


_____

Richman, J.


_____

Stewart, J.

*People v. Escareno* (A160209)

| | |
|---|---|
| Trial Court: | Napa County Superior Court |
| Trial Judge: | Hon. Elia Ortiz |
| Attorney for Appellant: | By Appointment of the Court of Appeal<br>First District Appellate Project<br>Stanley Dale Radtke |
| Attorneys for Respondent: | Attorney General of California<br>Xavier Becerra |
| | Lance E. Winters<br>Chief Assistant Attorney General |
| | Jeffrey M. Laurence<br>Senior Assistant Attorney General |
| | Catherine A. Rivlin<br>Supervising Deputy Attorney General |
| | Rene A. Chacon<br>Supervising Deputy Attorney General |